UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| ADAM CONSTRUCTION | ) | Chapter 11 |
| CORPORATION, INC., | ) | Case No. 03-19301-WCH |
| | ) | |
| Debtor. | ) | |
| | ) | |

FIRST AMENDED
JOINT PLAN OF REORGANIZATION
PROPOSED BY THE DEBTOR
ADAM CONSTRUCTION CORP. AND EQUITY HOLDER ALBERT MENDELSOHN

Pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") Adam Construction Corporation, Inc. ("Debtor" or "Adam"), the debtor in the above-captioned Chapter 11 proceeding, and Albert D. Mendelsohn ("Mendelsohn"), the holder of 100% of the equity interest in the Debtor, jointly propose this Plan of Reorganization (the "Plan") to the creditors of the Debtor. Reference is made to the Disclosure Statement (as that term is defined in the Plan) for a discussion of the Debtor's history, business, assets and projections of future operations, together with a summary and analysis of the Plan and related matters.

Subject to the restriction on modifications set forth in Section 1127 of the Bankruptcy Code, the Plan Proponents expressly reserve their right to alter, amend or modify the Plan before the Effective Date.

SUMMARY OF PLAN

This Plan provides for the compromise and satisfaction of claims by and between the Debtor, Mendelsohn, Bradford Development Corporation, Bradford Development Services, LLC, CFK of Newton Development Company, LLC, 1140 Beacon Street, LLC, Charles Street,

LLC, Robert Fox, William Leatherbee and Francis X. DeCoste, Jr. and their respective officers, directors, agents and affiliates, all as more particularly set forth below. Mendelsohn and Bradford will make equal cash contributions to the Debtor for the purposes of funding this Plan. Additionally, Bradford, Mendelsohn and Centennial will each make available to creditors who accept the provisions of the Third Party Release provided for in the Plan, by not opting to preserve Third Party Claims, a further dividend in consideration of their release of the Third Party Claims. The Plan provides for the payment of secured creditors in accordance with the terms of their claims.

<u>ARTICLE I</u>

<u>DEFINITIONS</u>

A.      Certain terms used in the Plan are defined in §101 of the Bankruptcy Code. In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear herein with initial capital letters) have the meanings set forth below. Any capitalized term used, but not defined below or elsewhere in this Plan, that is defined in either the Disclosure Statement or the Bankruptcy Code shall have the meaning given therein.

1.      "**<u>Additional Fund Dividend</u>**" means those additional amounts contributed by Bradford, Mendelsohn and Centennial in consideration of the Third Party Release to those creditors who accept the provisions of the Third Party Release by not opting to preserve Third Party Claims, said amounts being $150,000 ($50,000 each), as well as the waiver by the Released Parties of any dividend which might be due to them as Holders of Claims.

2.      "**<u>Administrative Claims</u>**" means claims for costs and expenses of administration of the kind described in §507(a)(1) of the Bankruptcy Code, including, without limitation, trade

obligations incurred by the Debtor subsequent to the commencement of the Chapter 11 case, any fees payable pursuant to 28 U.S.C. §1930(a)(6) and all fees of all Chapter 11 professionals.

3.    **"Allowed Claim"** means a claim against the Debtor which has been scheduled by the Debtor as liquidated in amount and not disputed or contingent or which is set forth in a proper and timely filed proof of claim filed on or before the Bar Date, in either case, as to which (a) no party in interest entitled to do so has filed an objection to such claim within any time required under this Plan or otherwise fixed by the Bankruptcy Court, or (b) if such party in interest has filed an objection to such claim, the claim is allowed by Final Order of the Bankruptcy Court provided, however, that the claim is an Allowed Claim only to the extent allowed by such Order in accordance with applicable law, or (c) the claim is allowed under this Plan.  Should the Bankruptcy Court estimate any claim pursuant to §502(c) of the Bankruptcy Code, such claim shall be deemed an Allowed Claim only to the extent estimated by the Bankruptcy Court.  An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated hereafter in this Plan.

4.    **"Bar Date"** means June 4, 2004.

5.    **"Bankruptcy Code" or "Code"** means Title 11 of the United States Code, as now in effect or hereafter amended to the extent that such amendment(s) is (are) retroactively applied to this Chapter 11 Case.

6.    **"Bankruptcy Court"** shall mean The United States Bankruptcy Court for the District of Massachusetts in which the Debtor's case is pending.

7.    **"Bradford"** means Bradford Development Corporation, Bradford Development Services, LLC, CFK of Newton Development Company, LLC, 1140 Beacon Street, LLC and Charles Street, LLC.

8.      **"Bradford Parties"** means Bradford Development Corporation, Bradford Development Services, LLC, CFK of Newton Development Company, LLC, 1140 Beacon Street, LLC and Charles Street, LLC, Robert Fox, William Leatherbee and Francis X. DeCoste, Jr.

9.      **"Business Day"** means any day other than Saturday, Sunday or a legal holiday in Massachusetts.

10.      **"Centennial"** means Centennial Insurance Company and Atlantic Mutual Insurance Company.

11.      **"Chapter 11 Case"** means the Debtor's Chapter 11 Case No. 03-19301-WCH pending in the Bankruptcy Court.

12.      **"Claim"** means a claim as defined in Section 101(5) of the Bankruptcy Code, and as supplemented by Section 102(2) of the Bankruptcy Code, against the Debtor or property of the Debtor, whether or not asserted, whether known or unknown, contingent or non contingent, whether arising before or after the Petition Date.

13.      "**Claim Holder**" or "**Claimant**" means the Holder of a Claim.

14.      **"Confirmation Date"** means the date upon which the Confirmation Order shall be entered by the Bankruptcy Court.

15.      **"Confirmation Order"** means the Order entered by the Bankruptcy Court confirming the Plan pursuant to §1129 of the Bankruptcy Code.

16.      **"Contested Claim"** means any claim or portion thereof as to which the Debtor or any party in interest has filed an objection which has not been determined by a Final Order of the Bankruptcy Court, or which claim or portion thereof, prior to the date an objection is brought, (a) exceeds the amount of the claim scheduled by the Debtor or is scheduled by the Debtor as

contingent, disputed and/or liquidated or (b) is subject to disallowance under §502(d) of the Bankruptcy Code.

17.    **"Creditor"** means any Holder of a Claim.

18.    **"Debtor"** shall mean Adam Construction Corporation, Inc., the co-proponent of this Plan.

19.    **"Disclosure Statement"** means the Disclosure Statement with respect to this Plan of Reorganization proposed by the Debtor in this Chapter 11 Case.

20.    **"Effective Date"** means the date which is ten days following the Final Confirmation Date, except that at any time following the entry of the Confirmation Order, the Debtor may declare the Effective Date to be any earlier date.

21.    **"Final Confirmation Date"** means the date on which the Confirmation Order becomes a Final Order.

22.    **"Final Order"** means an Order as to which the time to appeal, petition for certiorari or seek re-argument or re-hearing has expired and as to which no appeal or petition for re-hearing or certiorari is pending or, if an appeal or petition for re-hearing or certiorari has been timely filed or taken, the Order or Judgment has been affirmed by the highest Court to which the Order was appealed, or the petition for re-hearing or certiorari has been denied and the time to take any further appeal or to seek any re-hearing or certiorari has expired; provided, however, that a possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

23.    **"Holder"** means a Person holding an Interest or Claim.

24.  **"New Stock"** means stock issued in accordance with the Plan after the Effective Date.

25.  **"Old Stock"** means the existing stock of the Debtor as of the Effective Date.

26.  **"Petitioning Creditors"** means those parties joining in the original involuntary petition and the amended involuntary petition as filed with the Bankruptcy Court.

27.  **"Petition Date"** means November 7, 2003.

28.  **"Plan"** means this Chapter 11 Plan of Reorganization as amended, modified or altered in accordance with the Bankruptcy Code.

29.  **"Plan Proponents"** means the Debtor and Albert D. Mendelsohn.

30.  **"Projects"** means 64 Sewall Ave, The Residences at Chestnut Hill – GA1, The Residences at Chestnut Hill – GA2, Townhouses at Chestnut Hill and 1140 Beacon Street.

31.  **"Mendelsohn"** means Albert D. Mendelsohn, his relatives, heirs, family members, successors and assigns.

32.  **"Released Parties"** means Bradford, Mendelsohn and Centennial and their respective shareholders, members, officers, directors, employees, agents, attorneys, consultants, , accountants and affiliates (and each of their, investment bankers, accountants and affiliates), including, but not limited to, Robert Fox, William Leatherbee and Francis X. DeCoste, Jr.; provided, however, that National Lumber Co., its shareholders, members, officers, directors, employees, agents, attorneys, consultants, accountants and affiliates, including, but not limited to, Steven Kaitz, are not included within the definition of Released Parties.

33.  **"Settlement Fund"** means the amount of $200,000 in cash contributions provided by Bradford and Mendelsohn less allowed administrative expenses.

34.     **"Third Party Claims"** means any and all claims against any of the Released Parties.

35.     **"Third Party Release"** means the release of the Released Parties by Holders of Claims who elect to receive the Additional Fund Dividend, by not opting to preserve Third Party Claims.

36.     **"Unclaimed Distribution"** means any distribution under the Plan that is unclaimed after ninety (90) days following the distribution date on which there was distributed or made available to the holder of an Allowed Claim the property that is the subject of the Unclaimed Distribution (in the case of distribution by check, the distribution date shall be the date of the check).

37.     **"Unresolved Claim"** means any Contested Claim or any claim to the extent that it is not an Allowed Claim.

ARTICLE II

TREATMENT OF UNCLASSIFIED CLAIMS

A.     Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for purposes of voting on, or receiving distributions under, the Plan.   Holders of such Claims are not entitled to vote on the Plan.  All such claims are treated separately in accordance with this Article II and in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code.

B.     <u>Administrative Expense Claims</u>.  Each Holder of an Allowed Administrative Expense Claim shall receive the unpaid amount of such Allowed Administrative Expense Claim in Cash on the later of (i) the Effective Date, (ii) the date such claim becomes an Allowed Administrative Expense Claim or (iii) on such other date as may be agreed to between the Holder

7

and the Plan Proponents, provided, however, that those Allowed Administrative Expense Claims representing ordinary obligations incurred by the Debtor during the Chapter 11 case shall be paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular agreements governing such obligations.

C.   <u>Priority Tax Claims</u>.  Each Holder of an Allowed Priority Tax Claim against the Debtor shall receive from the Debtor in full satisfaction, settlement and release of such claim either (i) deferred cash payments over a period not to exceed six years form the date of assessment of a value as of the Effective Date equal to the Allowed amount of such claim; or (ii) such terms as may be agreed upon by such Holder and the Plan Proponents.  The rate of interest shall be agreed upon by the Plan Proponents and the Holder of the claim, or failing such agreement, shall be determined by the Bankruptcy Court.

<u>ARTICLE III</u>

<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

A.   All claims against the Debtor, including all claims arising from the rejection of executory contracts, and all interests arising from the ownership of stock of the Debtor shall be bound by the provisions of this Plan and are hereby classified as follows:

Class 1:   Priority Claims.

Class 2:   The Allowed Claims of Eastern Bank.

Class 3:   The Allowed Claims of General Motors Acceptance Corporation ("GMAC") and all other secured creditors not separately classified.

Class 4:   The Allowed Claims of  Unsecured Creditors.

Class 5:   The interests of stockholders in the Debtor.

Claims in Classes 2 through 5 are impaired under this Plan.

Unless otherwise specifically provided for in the Plan or Confirmation Order, interest shall not accrue on any claim, and no holder of a claim shall be entitled to interest accruing on or after the Petition Date on any claim.

**ANY HOLDER OF A CLAIM OR INTEREST IN CLASSES 1 THROUGH 5, WHO FAILS TO OBJECT TO THE CLASSIFICATION AND/OR THE DESIGNATION AS IMPAIRED OR UNIMPAIRED PROVIDED IN THIS PLAN, IN A WRITING, FILED WITH THE BANKRUPTCY COURT AND SERVED UPON COUNSEL FOR THE DEBTOR PRIOR TO THE DEADLINE FOR FILING OBJECTIONS TO THE CONFIRMATION OF THE PLAN SHALL BE DEEMED TO HAVE ACCEPTED ALL SUCH CLASSIFICATIONS AND/OR DESIGNATIONS AND SHALL BE BOUND THEREBY.**

## ARTICLE IV

### PROVISIONS FOR CLAIMS IN CLASS 1 (PRIORITY CLAIMS)

A.    Unless otherwise agreed to by the Plan Proponents and the Holder, each Holder of an Allowed Priority Claim to the extent then due and owing shall be paid in Cash in full on the Effective Date.

## ARTICLE V

### PROVISIONS FOR CLAIMS IN CLASS 2
### (SECURED CLAIMS FORMERLY HELD BY  EASTERN BANK )

A.    Unless the Holder of the claim and the Plan Proponents agree to different treatment, the Class Two Claimholder shall receive payment in cash in the amount of $370,531.61 plus interest on and after September 14, 2004 at the per diem rate of $56.95.

B.     Nothing provided for herein, shall have the effect of altering, amending, abridging or otherwise affecting in any manner the terms and conditions of that Order entered by the Court on October 20, 2004, approving the Stipulation between Eastern Bank, Charmoy, Stolzberg & Holian LLP, Albert Mendelsohn and Deborah Mendelsohn.

C.     The Class Two claimholder shall retain its interest in the collateral until the Class Two claim has been paid in full, but waives any right to receive any of the Settlement Fund or Additional Fund Dividend.

<u>ARTICLE VI</u>

PROVISIONS FOR CLAIMS IN CLASS 3
(SECURED CLAIMS OF GENERAL MOTORS ACCEPTANCE CORP.
<u>AND ALL OTHER SECURED CREDITORS NOT SEPARATELY CLASSIFIED )</u>

A.     Unless the Holder of the Claim and the Plan Proponents agree to different treatment, the holder of any Class 3 claim shall receive in full satisfaction, settlement and release and discharge of any Allowed Claim in Class 3, one of the following treatments, at the election of the Plan Proponents:

1.     The legal, equitable and contractual rights to which such Holder of an Allowed Claim is entitled shall be reinstated and such Holder shall be paid by the Debtor in accordance with such rights;

2.     The Debtor shall surrender all collateral securing such Allowed Claim to the Holder in full satisfaction, settlement or release of such Allowed Claim; or

3.     The Debtor will make deferred cash payments having a present value as of the Effective Date equal to the value of the collateral securing the claim and the holder of such claim shall retain its interest in the collateral.

The Plan Proponents will make their election on or before the Effective Date and provide notice of same to any creditor holding an Allowed Claim in Class Three. In the event no election is made, the Class 3 Claimholder shall receive the treatment described in Paragraph A(3) above.

## ARTICLE VII

### PROVISIONS FOR CLAIMS IN CLASS 4
### (UNSECURED CLAIMS)

A.      The Class Four Claimholders, those creditors holding unsecured claims against the Debtor, shall receive on the Effective Date in full satisfaction, settlement and release of their Allowed Claim a pro rata share of the Settlement Fund. The percentage distribution shall be calculated on a pro rata basis by multiplying 100% by a fraction, the numerator of which shall be the Allowed Claim of the Holder, and the denominator of which shall be the total of all allowed Class Four Claims.

B.      Bradford, Mendelsohn and Centennial  have agreed to contribute, on behalf of themselves and the other Released Parties,  the Additional Fund Dividend for the benefit of Class 4 claimholders who accept the provisions of the Third Party Release by not opting to preserve Third Party Claims.  These amounts would not otherwise be available to the estate for distribution to Class 4 claimholders.  On the Effective Date, Bradford, Mendelsohn and Centennial shall fund the Additional Fund Dividend by each contributing the amount of $50,000, and by causing the Released Parties to waive their rights to any dividend which would otherwise be due to them as the Holders of Claims against the Debtor.  Class 4 claimholders who do not indicate on their Ballot that they wish to preserve claims against the Released Parties shall be deemed to have participated in the Third Party Release and shall be forever barred from asserting any claims whatsoever against the Released Parties.  Class 4 claimholders who indicate on their Ballot that they wish to preserve

claims against the Released Parties shall not receive any portion of the Additional Fund Dividend

and shall only receive their pro rata share of the Settlement Fund.

       C.      Any Creditors holding a claim against Centennial pursuant to any bonds issued by

Centennial shall make those claims in accordance with the terms and conditions of the bonds on or

before the date set for objection to confirmation of this Plan or shall forever be barred from making

any such claims against the Debtor and shall be deemed to have released, waived and fully

discharged any such claims.

## ARTICLE VIII

PROVISIONS FOR INTERESTS IN CLASS 5
EQUITY HOLDERS IN ADAM CONSTRUCTION CORPORATION, INC.

A.        The interests of Old Stock Holders shall be canceled on the Effective Date
and no distributions or payments shall be made on account of such
interests.

B.        In consideration of the amounts paid to the estate by Mendelsohn,
Mendelsohn shall receive New Stock Interests in the Debtor equal to
100% of the outstanding stock.

## ARTICLE IX

EXECUTORY CONTRACTS

       A.      On and after the Effective Date, all executory contracts and unexpired leases shall be

deemed to have been assumed by the Debtor in accordance with the provisions of Sections 365 and

1123 of the Bankruptcy Code, except for those executory contracts and unexpired leases that (1)

have been rejected by Order of the Bankruptcy Court, (2) are the subject of a motion to reject

pending on the Effective Date or (3) are identified in a schedule attached to the Disclosure

Statement, or otherwise filed by the Court prior to the Confirmation Date, as executory contracts or unexpired leases to be rejected.

B.      Entry of the Confirmation Order shall, upon the occurrence of the Effective Date, constitute (1) approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of executory contracts and unexpired leases assumed hereunder, (2) the extension of time, pursuant to Section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign or reject the unexpired leases through the date of entry of an order approving same, and (3) the approval, pursuant to Sections 365(a) and 1123 (b)(2) of the rejection of the unexpired leases and executory contracts rejected pursuant to this Article.

C.      All proofs of claim with respect to Claims arising out of the rejection of unexpired leases or executory contracts, if any, must be filed with the Bankruptcy Court within thirty (30) days after the entry of an Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Holders of such claims who fail to file proofs of claim within such deadline(s) shall be forever barred from asserting such claims against the Debtor. Claims arising from the rejection of executory contracts and unexpired leases that become Allowed Claims shall be treated and classified as unsecured claims.

D.      The obligations of the Debtor to indemnify any Person serving as an officer, director or employee of the Debtor as of the Petition Date by reason of such Person's service in such capacity shall be deemed and treated as executory contracts and assumed pursuant to the Plan and section 365 as of the Effective Date.   Any such indemnification obligations shall survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Confirmation Date.

<u>ARTICLE X</u>

PROVISIONS FOR THE IMPLEMENTATION OF THE PLAN
<u>COMPROMISE AND SETTLEMENT</u>

A.      <u>Cash Contribution By Bradford and Mendelsohn</u>. On the Effective Date, the Debtor

shall compromise, settle and release all claims by and among Bradford, Mendelsohn and the Debtor

and shall file appropriate stipulations of dismissal with prejudice and without costs, in every action

pending in which any of the Debtor, the Bradford Parties and Mendelsohn have asserted claims

against each other, including, without limitation, (i) those certain actions pending in the Superior

Court Department of the Massachusetts Trial Court, Middlesex County styled as (a) <u>Adam</u>

<u>Construction Corp. v. CFK of Newton Development Company, LLC</u>, MICV2003-04679 and (b)

<u>Adam Construction Corp. v. CFK of Newton Development Company, LLC</u>, MICV2003-04680;

and (ii) those certain actions pending in the Superior Court Department of the Massachusetts Trial

Court, Norfolk County styled as (y) <u>Adam Construction Corp. v. 1140 Beacon Street, LLC</u>,

NOCV2003-02116 and (z) <u>Adam Construction Corp. v. Charles Street, LLC</u>, NOCV2003-0211;

and shall release any and all liens, bond claims or other security for the released claims. Bradford,

Mendelsohn, the Debtor and the other Released Parties shall execute and deliver mutual cross

releases of any and all claims.  Bradford's release of the Debtor shall include a release of its bonding

agent Centennial and the dismissal with prejudice and without costs, in every action pending in

which Bradford has asserted claims against Centennial, including, but not limited to, the claims of

CFK of Newton Development Company, LLC asserted in Civil Action No. 04-CV11828-DPW in

the United States District Court of the District of Massachusetts.  Bradford and Mendelsohn shall

each pay to the estate on the Effective Date the amount of $100,000, in full settlement of all claims

and shall release any and all claims held by them against the estate. The Debtor shall have cash on

hand of $200,000 with which to pay allowed administrative claims and distribute a dividend to unsecured creditors.

B.    <u>Compromise of Controversies</u>. Pursuant to Bankruptcy Rule 9019, and in consideration of the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith settlement of all Claims and controversies resolved pursuant to the Plan, including without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or among the Debtor,  Bradford, Mendelsohn and/or the other Released Parties, arising out of, in relation to, or in connection with, the business or affairs of or transactions with the Debtor, and each of their respective professionals, including but not limited to any Claims in connection with the construction of the Projects.  The compromises and settlements contemplated by the foregoing shall exclude the indemnity obligations of Mendelsohn to Centennial as set forth in the General Agreement of Indemnity dated March 14, 2002, which will remain in full force beyond the Effective Date.  The entry of the Confirmation Order shall constitute the Court's approval of each of the foregoing compromises or settlements, and all other compromises or settlements provided for in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtor, the Estate, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.  The provisions of the Plan, including without limitation, its release, injunction, exculpation and compromise provisions are mutually dependent and non-severable.

C.    <u>Releases by the Debtor</u>. As of the Effective Date, the Debtor hereby waives, releases and discharges the Released Parties from any claim (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligation, right, cause of action or liability, whether known or

15

unknown, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, based in whole or in part on any act or omission, transaction or occurrence from the beginning of time through the Effective Date in any way relating to the Debtor, the Projects, the case or the Plan.

      D.    <u>Releases by Holders of Claims and Interests</u>.  On the Effective Date, each Holder of a Claim or Interest shall be deemed to unconditionally release and forever waive all claims, debts, obligations, demands, liabilities, suits judgments, damages, rights and causes of action, whatsoever (other than the right to enforce the Debtor's or the Reorganized Debtor's obligations under the Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any transactions or matters with the Debtor, its estate or in connection with this reorganization case, the Plan or the Disclosure Statement, that occurred or could have occurred on or prior to the Effective Date (which release and waiver will be in addition to the discharge of Claims and termination of Interests in accordance with the Plan, the Confirmation Order and the Bankruptcy Code) against the Debtor and each of the current and former directors, officers, employees, members, attorneys, accountants, consultants, advisors and other representatives of the Debtor, acting in such representative capacities.  The releases contemplated by the foregoing shall exclude the indemnity obligations of Mendelsohn to Centennial as set forth in the General Agreement of Indemnity dated March 14, 2002, which will remain in full force beyond the Effective Date.

      E.    <u>Releases by Holders of Claims and Interests Who Elect To Participate in the Third Party Release</u>.  Moreover, except those Holders of Claims or interests who indicate on a Ballot submitted in accordance with the Plan that they wish to preserve such claims, each Holder of a Claim shall be deemed to unconditionally release and forever waive all claims, debts, obligations,

demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever (other than the right to enforce the Debtors' or the Reorganized Debtors' obligations under the Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any transactions or matters with the Debtor, their estates or in connection with this reorganization case, the Plan or the Disclosure Statement, that occurred or could have occurred on or prior to the Effective Date (which release and waiver will be in addition to the discharge of Claims and termination of Interests in accordance with the Plan, the Confirmation Order and the Bankruptcy Code) against each of the Released Parties.

In consideration of the Third Party Release, Bradford, Mendelsohn and Centennial shall pay to the estate the Additional Fund Dividend for distribution to those claimholders who accept the provisions of the Third Party Release by not opting to preserve Third Party Claims. The Additional Fund Dividend shall consist of (1) the amount of $50,000 each, for a total of $150,000 and (2) the waiver by the Released Parties of the amount of any dividend or distribution that would be received by them under the Plan for redistribution to the claimholders who agree to participate in the Third Party Release.

F.    <u>Exculpation and Limitation of Liability</u>.  On the Effective Date, the Debtor and the Released Parties shall neither have nor incur any liability to any Holder of any Claim or Interest for any act or omission in connection with, or arising out of the Debtors' restructuring, this Plan, the Chapter 11 Case, the Disclosure Statement, the solicitation of votes for and the pursuit of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including, without limitation, all documents ancillary thereto, all decisions, actions,

inactions, and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of this Plan except willful misconduct or gross negligence as determined by a Final Order of the Bankruptcy Court. The foregoing parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

G.    <u>Injunction Related to Releases and Exculpation</u>. Upon entry of the Confirmation Order, all parties, persons and entities, whether directly, derivatively or otherwise, will be permanently enjoined from commencing or prosecuting any claims, obligations, suits, judgments, damages, debts, rights, causes of action or liabilities released pursuant to this Plan.

H.    Bradford and Mendelsohn shall be released from any and all claims held by the estate in consideration of the contribution made by them.

I.    The Debtor shall as of the Effective Date cancel all existing Old Stock and shall reissue New Stock to Mendelsohn.

J.    Except as otherwise provided herein, the Debtor, as of the Confirmation Date, shall be vested with all of its property free and clear of all claims, liens and encumbrances and may operate its business free of any restrictions under the Bankruptcy Code, except as otherwise provided herein or as ordered by the Bankruptcy Court.

K.    The Debtor shall retain any and all claims it may have against National Lumber Co., and its shareholders, members, officers, directors, employees, agents, attorneys, consultants, accountants and affiliates and intends to prosecute these claims.

L.    The Debtor will be responsible for timely payment of fees incurred pursuant to 28 USC § 1930(a)(6). After confirmation, the Debtor shall serve on the United States Trustee a monthly financial report for each month (or portion thereof) the case remains open. The monthly financial report shall include the following:

(1)     a statement of all disbursements made during the course of the month, whether or not pursuant to the plan;

(2)     a summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan;

(3)     debtor's projections as to its continuing ability to comply with the terms of the plan;

(4)     a description of any other factors which may materially affect the debtor's ability to consummate the plan; and

(5)     an estimated date when an application for final decree will be filed with the Bankruptcy Court (in the case of the final monthly report, the date the decree was filed).

<u>ARTICLE XII</u>

<u>RESOLUTION OF CLAIMS</u>

The Plan Proponents shall have primary responsibility for the resolution of claims against the Debtor, and shall have standing to object to the allowance of any claim and to assert and prosecute any counterclaim relative thereto (without prejudice to any right of any other party in interest to do so under applicable law). All such objections and counterclaims shall be filed within 45 days after the Final Confirmation Date, or within such further time as may be fixed by the Bankruptcy Court on motion of the Debtor.

## ARTICLE XIII

## MISCELLANEOUS

A.        <u>Discharge</u>.  Except as otherwise provided in this Plan or the Confirmation Order,

confirmation of this Plan shall, pursuant to Section 1141(d) (1) of the Bankruptcy Code, constitute a

complete satisfaction, discharge, and release, effective as of the Effective Date, of the Debtor, and

its Property, of and from and all debts, liabilities or Claims arising on or before the Confirmation

Date, both prior to and from and after the commencement of the Debtor Chapter 11 case, whether or

not (a) a proof of claim is filed or deemed filed under Section 501 of the Bankruptcy Code, or (b)

the holder of such Claim has accepted the Plan.  In addition, all creditors shall be deemed

permanently enjoined after the date the Confirmation Order is entered from asserting against the

Debtor or any of its assets or property, any claims or interests based upon any act or omission,

transaction or other activity of any kind or nature that occurred on or prior to the Confirmation Date.

Pursuant to Section 524(e) of the Bankruptcy Code, confirmation of the Plan shall not affect

(whether by way of establishing, waiving, limiting or discharging) the liability of any entity other

than the Debtor on any claim, except as expressly provided in the terms of the Plan.

B.        <u>Modification of the Plan</u>.  The Debtor may modify this Plan in accordance with

Section 1127 of the Bankruptcy Code or, after confirmation of the Plan, may amend the Plan or

depart from the terms thereof with the consent of each holder of any claim or interest which is

adversely affected.  The Debtor may not modify or amend any provision of the Plan adversely

affecting the interests of Bradford without the written consent of Bradford. After confirmation, the

Debtor may, with the approval of the Bankruptcy Court, cure any error or omission or reconcile any

20

inconsistency in the Plan or the Confirmation Order, if necessary to further the intent and purposes of this Plan, so long as the interests of the creditors are not thereby materially or adversely affected.

C.    <u>Closing Case</u>  The Debtor shall file a motion seeking a Final Decree to close the case as soon as practical.

<u>ARTICLE XIV</u>

<u>ACCEPTANCE OR REJECTION OF PLAN</u>.

A.    Each impaired class of claims shall be entitled to vote.

<u>ARTICLE XV</u>

<u>RETENTION OF JURISDICTION</u>

A.    Upon the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until the entry of a final decree closing the Chapter 11 Case.

ADAM CONSTRUCTION CORP., INC..                ALBERT D. MENDELSOHN

By,                                           By,

_____              _____

By its attorneys,                             By his attorneys,

/s/ Paul D. Moore (By Permission)             /s/ Peter J. Haley
Paul D. Moore (BBO No. 3531000)               Stephen F. Gordon (BBO No. 203600)
Jennifer L. Hertz (BBO No. 645081)            Peter J. Haley (BBO No. 543858)
DUANE MORRIS LLP                              Todd B. Gordon (BBO No. 652482)
470 Atlantic Avenue, Suite 500                Gordon Haley LLP
Boston, Massachusetts 02210                   101 Federal Street
Tel:    (617) 289-9200                        Boston, Massachusetts 02110
                                              Tel:    (617) 261-0100
Dated: April 6, 2005

P:\Clients\Mendelsohn\Pleadings\Joint Plan 040405 328 pm.doc